IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID ANDREW MARTINEZ, EDMUND DESHAWN DENEILIOM, RUBEN ALEJANDRO QUIROZ, CESAR CASTELLANOS, LUCIO LERENZO MENDOZA, SAMUEL TEWOLDE, KALIN CARELL, and ANDREW HILL-PICCOLA,

    Defendants.

No. CR 13-00794 WHA

**ORDER RE MOTIONS TO DISMISS AND FOR BILL OF PARTICULARS**

## INTRODUCTION

In this prosecution under the Racketeer Influenced and Corrupt Organizations Act, the Violent Crimes in Aid of Racketeering Act, and other penal statutes, two defendants move (1) to dismiss certain counts under the indictment, or alternatively, (2) for a bill of particulars. To the extent stated below, the motions to dismiss are **DENIED**. The motions for a bill of particulars are **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

This is a non-capital criminal gang prosecution alleging seventeen counts against eight defendants. According to the indictment, nearly all defendants are connected to the Varrio South Park gang, a Norteño group that is affiliated with Nuestra Familia (a prison gang). Only two defendants — Lucio Lerenzo Mendoza and Cesar Castellanos — now challenge those counts

brought against them. The essence of their challenge is that the indictment fails to allege sufficient facts to inform them of the crimes charged. To that end, Mendoza and Castellanos move to dismiss those counts, or in the alternative, for a bill of particulars.

The counts in dispute are as follows. Both Mendoza and Castellanos contest Counts One through Four: (1) racketeering conspiracy; (2) conspiracy to commit murder in aid of racketeering; (3) conspiracy to commit assault with a dangerous weapon in aid of racketeering; and (4) use/possession of firearm in furtherance of crime of violence. In addition, Castellanos challenges Counts Five and Fifteen, which charge him (but not Mendoza) with attempted murder in aid of racketeering and witness tampering. Following full briefing and oral argument, the order decides all motions below.

**ANALYSIS**

**1. MOTIONS TO DISMISS.**

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged." *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995). In our jurisdiction, even "[t]he use of a 'bare bones' information — that is one employing the statutory language alone — is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished." *Ibid*.

The order now turns to the contested counts, addressing movants' challenges below.

**A. Count One — Racketeering Conspiracy.**

Count One charges Mendoza and Castellanos with racketeering conspiracy under Section 1962(d) of Title 18 of the United States Code. Of note, this is the only RICO charge alleged in the indictment. Morever, Count One states (Indict. ¶¶ 18, 19) (emphasis added):

> 18.  Beginning on a date unknown to the Grand Jury but since at least the mid-2000s, and continuing up through and including the present, in the Northern District of California and elsewhere, [Mendoza, Castellanos, and other named defendants] together with others known and unknown, each being a person employed by and

> associated with [the VSP gang], an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, *willfully, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of* [the VSP] *enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of*:
>
> a. multiple acts and threats involving murder . . . ;
>
> b. multiple acts and threats involving robbery . . . ;
>
> c. multiple acts involving dealing in controlled substances . . . ;
>
> d. multiple acts indictable under 18 U.S.C. [] 1951 (interference with commerce, robbery, or extortion); and
>
> e. multiple acts indictable under 18 U.S.C. [] 1503 (obstruction of justice); 1512 (tampering with a witness, victim, or informant); and 1513 (retaliating against a witness, victim, or informant).
>
> 19. It was part of the conspiracy that *each defendant agreed that a member of the conspiracy would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise*.

Neither side disputes that the above employs the language of Section 1962(c) and (d) in asserting racketeering conspiracy. But there is more. Count One goes on to provide an overview of the history and structure of Nuestra Familia, its control over Norteño gangs, the ongoing gang war with the Mexican Mafia and Sureño gangs, as well as the VSP gang and Mendoza and Castellanos' membership therein. There are also specific allegations as to activities that Mendoza took in furtherance of the VSP gang, such as how, "[i]n or about November 2013," he was tapped by another defendant "to assume control of all VSP street operations," paid and collected VSP "taxes," and "agreed to participate in assaults and hits against individuals deemed 'no good' by the gang." So too for Castellanos: "[O]n or about October 9, 2012, [Castellanos] shot at and wounded a fellow gang member whom [Castellanos] believed to have challenged [his] status and authority within the gang," and "[o]n or about September 14, 2013, [Castellanos] also threatened to kill a woman if her ex-boyfriend testified against VSP member [Samuel

Tewolde]" (Indict. ¶¶ 13, 14). Given these details, as well as the language employed from Section 1962(c) and (d), the order finds that Count One adequately alleges racketeering conspiracy.

Nonetheless, Mendoza and Castellanos argue that Count One is deficient. According to Mendoza, the indictment fails to allege facts that would make *him* liable under any count. Castellanos is more specific, contending that Count One lacks adequate facts as to: (1) how *his* alleged conduct or participation in the alleged conspiracies furthered the VSP gang's activities (as opposed to his own motivations); (2) what *he* did to become part of the charged enterprise; and (3) what *he* and other reported members of the VSP gang did to engage in a pattern of "continued" and "related" racketeering acts. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). For support, both Mendoza and Castellanos cite to *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979), for the proposition that the indictment lacks specific facts and circumstances to inform them of Count One.

The order disagrees. As a preliminary matter, "a defendant is guilty of conspiracy to violate [Section] 1962(c) if the evidence showed that she *knowingly agree*[*d*] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (emphasis added). The mere agreement itself — here, to violate Section 1962(c) — is what Section 1962(d) forbids. Beyond that, racketeering conspiracy has "no requirement of some overt act or specific act," much less any requirement that the acts be "related" or "continuous." *Cf. Salinas v. United States*, 522 U.S. 52, 63 (1997). As such, Castellanos' position — that the indictment must allege specific facts as to what *he* did and how that conduct furthered gang activities — fails, as such facts are not required to adequately inform him of the elements of racketeering conspiracy. *Woodruff*, 50 F.3d at 676.

*Cecil* is also unpersuasive. There, our court of appeals addressed a "rather barren" indictment that tracked the language of (non-RICO) conspiracy statutes. The indictment provided only two factual allegations concerning the charged crimes — the general location of the alleged conspiracies (*i.e.*, Arizona, Mexico, and elsewhere) and the names of some of the purported co-conspirators — but otherwise lacked details, including the time frame in which the

4

conspiracies allegedly took place. *Cecil* thus found that the indictment "fail[ed] to allege sufficient facts to facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on facts presented to the Grand Jury." Of note, this decision was "predicated upon the absence of any factual particularity within the indictment." 608 F.2d at 1296–97.

That is not the situation here. Unlike in *Cecil*, the present indictment specifies three alleged incidents involving Mendoza and Castellanos. There is the November 2013 allegation — when Mendoza was reportedly tapped to assume control of VSP street operations and agreed to assault others deemed to be "no good" by the VSP gang. There are also allegations that Castellanos shot a fellow gang member on October 9, 2012, and that on September 14, 2013, he threatened to kill a woman. The indictment thus specifies enough dates and details to inform Mendoza and Castellanos of these alleged acts, satisfying even *Cecil*'s "requirement that an indictment contain a few basic factual allegations [to] accord[] defendants adequate notice of the charges against them . . . ." *Id.* at 1297.

Mendoza and Castellanos, however, contend that these three alleged incidents are not enough. For example, Mendoza argue that it is unclear what he allegedly agreed to in November 2013, what "taxes" refer to, and what assaults he committed or helped plan. Moreover, Castellanos argues that these allegations fail to specify whom he shot — whether it was another VSP gang member or some other Norteño gang member — and how threatening a woman shows his involvement in a RICO enterprise or a continued pattern of racketeering activity.

Be that as it may, an indictment "need only set forth the essential facts necessary to inform the defendant of what crime she is charged," and "need not explain all factual evidence to be proved at trial." *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993). It is thus unnecessary for the indictment to specify more details beyond what has already been pled, as the indictment sufficiently informs Mendoza and Castellanos of racketeering conspiracy.

**B.    Counts Two, Three, and Five — VICAR Conspiracies and Attempt.**

Mendoza and Castellanos further contest the sufficiency of Counts Two, Three, and Five: conspiracy to commit murder in aid of racketeering, conspiracy to commit assault with a dangerous weapon in aid of racketeering, and attempted murder of "Victim-1" in aid of

5

racketeering.* While all three counts are brought under the Violent Crimes in Aid of Racketeering Act, Counts Two and Three allege conspiracies, whereas Count Five asserts an attempt crime. In relevant part, Section 1959(a) of Title 18 of the United States Code provides (emphasis added):

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, *or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity*, *murders*, kidnaps, maims, *assaults with a dangerous weapon*, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, *or attempts or conspires so to do*, shall be punished —
>
> \*     \*     \*
>
> (5) *for attempting or conspiring to commit murder . . .* ; and
>
> (6) *for attempting or conspiring to commit a crime involving . . . assault with a dangerous weapon . . . .*

In Castellanos' view, these particular counts must be dismissed because the indictment lacks "any information about these offenses," such as what the circumstances were surrounding the alleged criminal agreements and how their attempt at murder furthered any conspiracy (Br. 17).

Not so. As to the alleged VICAR conspiracies, Counts Two and Three adequately track the statutory language of Section 1959(a). These counts also explicitly incorporate by reference details about the three alleged incidents from Count One. For example, Count Two states that "[p]aragraphs 1 through 17 . . . are realleged and incorporated by reference as though fully set forth herein," thereby incorporating details about Mendoza and Castellanos' alleged incidents from November 2013, October 9, 2012, and September 14, 2013 (Indict. ¶ 24). Count Two then states that "since at least the mid-2000s," and "for the purposes of gaining entrance to and maintaining and increasing position in VSP, an enterprise engaged in racketeering activity," Mendoza and Castellanos "willfully [and] intentionally did . . . conspire . . . to kill actual and

---

\* As noted above, both Mendoza and Castellanos are charged with Counts 2 and 3. Count 5, however, only charges Castellanos.

suspected members of rival gangs, individuals suspected of cooperating with law enforcement, and individuals who defied the will of VSP" (*id.* ¶ 27). So too for Count Three.

Here the order pauses to note Castellanos' contention that Counts One, Two, and Three are duplicitous. Although his brief uses "duplicity" and "multiplicity" interchangeably, the essence of Castellanos' argument is that these counts each charge multiple conspiracies with multiple agreements to commit disparate criminal acts (Br. 20). Counts One, Two, and Three must therefore be dismissed, or so Castellanos believes.

This incorrectly assumes that Counts One, Two, and Three all constitute the same offense. In fact, Count One alleges that Castellanos and other named defendants "conspire[d] . . . to conduct and participate . . . in the conduct of the affairs of the VSP enterprise through *a pattern of racketeering activity*," which is then defined as including acts of murder conspiracy and other types of offenses (Indict. ¶ 18) (emphasis added). The only conspiracy thus alleged under Count One is conspiracy to engage in a pattern of racketeering activity through an enterprise's affairs. Counts Two and Three then allege murder conspiracy and assault conspiracy under VICAR, thereby presenting charges that are distinct from the racketeering conspiracy under Count One. In other words, there is no duplicity as Castellanos has alleged, as Counts One, Two, and Three each charge their own conspiracies.

Nor is Count Five inadequate, as Castellanos asserts. In charging him with attempted murder under VICAR, Count Five also mirrors the language of Section 1959(a) and incorporates by reference the above details of the alleged incidents from November 2013, October 9, 2012, and September 14, 2013 (*id.* ¶ 31). Moreover, Count Five cites to "October 9, 2012" as the approximate date on which Castellanos and others attempted to murder "Victim-1." It is unclear whether "Victim-1" is the "fellow gang member" at whom Castellanos purportedly shot on that date, but this will be clarified in a bill of particulars, as discussed below. In any event, the order finds that Count Five, as well as Counts Two and Three, allege enough dates and details to inform Mendoza and Castellanos of the crimes charged.

### C.   Count Four — Use/Possession of Firearm.

Mendoza and Castellanos also argue that Count Four should be dismissed for insufficient detail. Unlike the other counts from above, Count Four charges Mendoza and Castellanos with use/possession of firearm in violation of Section 924(c) of Title 18 of the United States Code.

Again, the order disagrees with movants. While Count Four does not explicitly incorporate by reference details from earlier counts, it nevertheless asserts that "since at least the mid-2000s," Mendoza, Castellanos, and other named defendants knowingly used and carried, possessed, brandished, and discharged a firearm "during and in relation to a crime of violence . . . . namely, the VSP racketeering conspiracy charged in Count One . . . the conspiracy to commit murder in aid of racketeering charged in Count Two . . . and the conspiracy to commit assault with a dangerous weapon in aid of racketeering in Count Three . . . ." As a result, such an assertion not only tracks the language of Section 924(c), but also connects the alleged use/possession of a firearm to Counts One, Two, and Three — all of which point to the three alleged incidents from November 2013, October 9, 2012, and September 14, 2013.

The result is that while there is uncertainty as to when, during "the mid-2000s," Mendoza and Castellanos used or possessed a firearm in connection with the alleged conspiracies, there are certain "overt acts alleged in the indictment [that] adequately limit the time frame of the conspirac[ies]." *See United States v. Forrester*, 616 F.3d 929, 941 (9th Cir. 2010). Taken as a whole, the indictment is sufficiently complete to provide Mendoza and Castellanos with notice of Count Four.

### D.   Count Fifteen — Witness Tampering.

Castellanos contests Count Fifteen, which charges him with witness tampering under Section 1512(a)(2) of Title 18 of the United States Code. As noted above, Mendoza is not charged under this count.

Although Castellanos calls Count Fifteen a VICAR charge in his brief, that is inaccurate (Br. 15). Witness tampering under Section 1512(a)(2) is an offense separate from those under VICAR. In any event, Count Fifteen tracks the language of Section 1512(a)(2), while also stating how, "[o]n or about October 13, 2013," Castellanos "threatened to kill an individual

8

1  whom he believed would testify as a witness against [Tewolde] to prevent that witness from
2  testifying and providing information against [Tewolde]." For the reasons already discussed,
3  Count Fifteen adequately sets forth the elements of witness tampering and provides sufficient
4  facts to inform Castellanos of this charge.

### E. Special Sentencing Factors.

Finally, Castellanos attacks two of the indictment's special sentencing factors regarding Count One: conspiracy to commit murder, and attempted first-degree murder of "Victim-1" (Indict. ¶¶ 54–55). In brief, he claims that these factors provide insufficient detail and notice, such that "there is a danger that the Court, rather than the jury, will decide facts that increase the prescribed statutory maximum" (Br. 22). For support, Castellanos relies on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

This reliance is misplaced. Both sides generally agree that under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Ibid.* Indeed, Castellanos cites *Apprendi* for only this holding (Br. 22). *Apprendi*, however, does not require dismissal of an indictment based on a reported failure to provide notice of special sentencing factors. Nor has this order's own research revealed any such authority.

Accordingly, the special sentencing factors do not warrant dismissal here. The motions to dismiss Counts One, Two, Three, Four, Five and Fifteen are therefore **DENIED**.

### 2. MOTIONS FOR BILL OF PARTICULARS.

Alternatively, Mendoza and Castellanos request a bill of particulars. Granting or denying such a request is largely a matter of case-by-case discretion under Rule 7(f). *See United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). A bill of particulars, however, is limited "to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

9

1    Here, Mendoza asks for detail as to what the government believes he did, as well as when
2    and with whom he agreed to participate in the alleged RICO conspiracy (Reply 6). Castellanos
3    likewise seeks more information — as to whether he participated in any reported murders or
4    assaults for the VSP gang, and how his alleged murder attempt and threats to a witness related to
5    the VSP gang (Br. 23). Of note, the order only considers these specific requests that Mendoza
6    and Castellano make in their motions for a bill of particulars, even though they complain about
7    the indictment's lack of other details — such as the scope and circumstances of the alleged
8    conspiracy agreements or use of firearms — elsewhere in their motions to dismiss.

9    Even so, these requests are too broad. Mendoza and Castellanos are "not entitled to
10   know all the evidence the government intends to produce but only the theory of the
11   government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986). Nonetheless,
12   with respect to the RICO conspiracy alleged under Count One, the VICAR conspiracies alleged
13   under Counts Two and Three, the VICAR murder attempt alleged under Count Five, and the
14   witness tampering alleged under Count Fifteen, the motions for a bill of particulars are
15   **GRANTED** only to the following extent and subject to the last paragraph of the order. The
16   government is ordered to provide movants a bill of particulars clarifying three issues:

- The earliest date — as contended by the government — on which movants were members of the RICO and VICAR conspiracies alleged under Counts One, Two, and Three;

- The name of "Victim-1," as well as the circumstances and the supposed acts that Castellanos committed to attempt the murder of "Victim-1," as alleged under Count Five; and

- The name of the witness whom Castellanos believed would testify against Tewolde and whom Castellanos threatened to kill "on or about October 13, 2013," as alleged under Count Fifteen.

Such clarification will materially aid Mendoza and Castellanos in their preparation for trial. For instance, without knowing the earliest date on which they were supposed members of the racketeering conspiracy — which began "since at least the mid-2000s," — movants "cannot know the universe of conduct against which they must prepare a defense." *United States v. Cerna*, CR 08-0730 WHA, 2009 WL 2998929, *2 (N.D. Cal. Sept. 16, 2009).

10

Otherwise, the motions for a bill of particulars are **DENIED**. Except as stated above, Mendoza and Castellanos' requests for other information — such as the identities of unnamed RICO coconspirators — do not warrant a bill of particulars. Indeed, our court of appeals has stated that "the names of any unknown coconspirators . . . [and] all other overt acts that comprised the charged activity . . . do not warrant a bill of particulars." *See United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985). Moreover, the government reports that it has produced approximately 2,700 documents and 27 discs of audio, video, and photograph files, including law enforcement reports outlining defendants' roles in the alleged crimes, recorded telephone calls, audio and video recordings of gang meetings, drug and gun transactions, and cell phone data downloads (Opp. 19). Although the government concedes that it is still producing discovery, it has already provided defense counsel with a large amount of discovery that helps obviate the need for a bill of particulars here. *See, e.g.*, *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).

As stated above, the motions for a bill of particulars are thus **GRANTED IN PART AND DENIED IN PART**.

## CONCLUSION

For the reasons discussed above, the motions to dismiss are **DENIED**. Additionally, to the extent stated above, the motions for a bill of particulars are **GRANTED IN PART AND DENIED IN PART**. The government is ordered to deliver to Mendoza and Castellanos a bill of particulars clarifying the three issues discussed above, due by **5 PM ON MARCH 21, 2014**.

**IT IS SO ORDERED.**

Dated: March 12, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11